**NATURAL RESOURCES**

**S**ALE OF **V**ENISON **F**ROM **F**ARM-**R**AISED **D**EER IS **P**ROHIBITED

September 2, 1993

*The Honorable Kevin Kelly*
*House of Delegates*

You have requested our opinion whether §10-404 of the Natural Resources Article, Maryland Code ("NR" Article), would prohibit the sale of an imported "venison stick" in Maryland.

For the reasons stated below, we conclude that NR §10-404(c) would prohibit the sale of this "venison stick" in Maryland. Although we believe that this conclusion reflects the better construction of the statute, the language used in NR §10-404(c) does not convey the prohibition's true scope. Thus, we urge enactment of clarifying legislation, so that the statutory language accurately reflects the actual legislative objective.

**I**

**Imported "Venison Stick"**

"Venison stick," as described in your letter, is a processed meat product containing venison and beef as well as other flavorings. According to the food distribution company that wishes to sell the venison stick, the product is imported from New Zealand, where deer are raised on ranches for the purpose of the commercial sale of venison. A copy of the packaging enclosed with your letter indicates that the venison stick has been inspected and approved by the United States Department of Agriculture.[1]  The packaging of the venison

---

[1] Federal inspection and approval does not imply that a meat product must be sold in Maryland.  The Federal Meat Inspection Act preempts state law only with regard to labeling and the regulation of premises,

(continued...)

stick, as far as we can see, does not indicate whether the deer meat contained in the venison stick comes from farm-raised deer.

## II

### Current Statutory Text

NR §10-404(c) provides as follows:

> A person may not sell, offer for sale, purchase, offer to purchase, barter or exchange, at any time within the State any game bird or game mammal taken from the wild except the meat, pelt or carcass of any muskrat, raccoon, mink, otter, nutria, opossum, beaver, fox, long-tail weasel, fisher, or skunk, whether caught in this State, or in another state, territory, or country.

A "game mammal" includes a "forest game mammal." NR §10-101(h). A "forest game mammal" includes, among other things, "deer ...." NR §10-101(f). Because the term "forest game mammal" also encompasses "any part" of the mammal, the meat of one of these mammals cannot be sold.[2]

If we were considering solely the plain language of the statute, we would conclude that the sale of products made from farm-raised deer is not prohibited. The phrase "taken from the wild" is not defined by the statute. "Wild" is broadly defined as "living in a natural state; not domesticated, cultivated, or tamed." *American Heritage Dictionary* 1381 (2d college ed. 1982). Deer raised on a farm or ranch for venison would not exist in "a natural state" since "nature" generally refers to the woods or forest. Nor would deer raised on farms and ranches be considered "not domesticated [or]

---

[1] (...continued)

facilities, and operation of meat processing plants. Thus, states are free to prohibit the sale of certain meats. *See* 21 U.S.C. §678.

[2] In addition, deer mounts, antlers and antler mounts, and deer hides cannot be sold. *See* Memorandum of Advice from Assistant Attorney General Pamela Andersen to Major Woodward Willing (August 13, 1987).

cultivated" if they were being raised like cattle, sheep, or similar domesticated livestock. Thus, under the standard dictionary definition of "wild," farm-raised venison would not be "game mammals taken from the wild."

Another way to describe "game mammals taken from the wild" would be to refer to them as "wild mammals." "Wild mammals" is defined as "every mammal wild by nature, or any part, egg, or offspring, or dead body of any of them." NR §10-101(x). The question then becomes whether deer raised on a farm or ranch for venison would be considered "wild by nature." Deer farming is not widespread in the United States or abroad, nor are deer traditionally considered livestock. Therefore, we believe that deer generally would be considered "wild by nature." However, in order to determine whether farm-raised deer are considered "wild by nature," we must examine the application of the parallel term "game bird[s] ... taken from the wild."

As used in NR §10-404(c), the term "game bird[s]" refers to "forest game birds," which is further defined as "ruffed grouse and turkey." NR §10-101(e) and (h). So, if the term "any game bird or game mammal taken from the wild" were interpreted to include farm-raised game birds, then the sale of almost all turkeys would be prohibited. The Department of Natural Resources has never interpreted the statute to include farm-raised turkey because the result would, of course, be absurd. The Department suggests that farm-raised turkeys are treated differently than farm-raised deer under the statute because turkeys are not "wild by nature," since they have been raised and bred in captivity for many years.[3] Applying the Department's reasoning to farm-raised deer, if these deer have been raised and bred in captivity for years, as seems to be the case regarding the deer from which "venison stick" is made, then they would not be considered "wild by nature."[4] Accordingly, if we were

_____

[3] The Department of Natural Resources informs us that there is no physical difference in the species between wild and farm-raised turkeys.

[4] According to a 1992 Bill Analysis of House Bill 1379, which would have permitted and regulated deer farming in Maryland, the United States imports over one million pounds of venison annually from New Zealand and 30,000 pounds from Canada. Also, more than 40 states allow deer farming. It is reasonable to conclude that deer in the countries and

(continued...)

to apply the words of the statute literally, farm-raised venison would not be included within the term "game mammal[s] taken from the wild," and it could be sold in Maryland.

The text of a statute is the beginning point of statutory construction, however, not necessarily the end.  In construing a statute, the Court of Appeals recently stated:

> While the language of the statute is the primary source for determining legislative intent, the plain meaning rule is not absolute. Rather, a statute is to be construed reasonably with reference to the purpose, aim, or policies of the legislature reflected in the statute. Words in a statute must therefore, be read in a way that advances the legislative policy involved.

*Maryland State Police v. McCready*, 330 Md. 474, 483 (1993) (citations omitted).  Moreover, a longstanding administrative construction of a statute by an agency charged with administering it and legislative acquiescence in that interpretation "gives rise to the presumption that the interpretation is correct." *Morris v. Prince George's County*, 319 Md. 597, 613, 573 A.2d 1346 (1990) (quoting *Sinai Hospital v. Department of Employment*, 309 Md. 28, 46, 522 A.2d 382, 391 (1987)).  In this instance, the legislative policy underlying NR §10-404(c) is best discerned by examination of prior law, the legislative history of the relevant amendment – including, in particular, the bill title – and the consistent administrative construction given to NR §10-404(c).

---

[4] (...continued)
states that permit deer farming have been raised and bred in captivity for several years.

### III

### Evolution of NR §10-404(c)

#### *A.   1943 Enactment*

Section 10-404(c) was originally enacted by Chapter 708 of the Laws of Maryland 1943, codified in former Article 66C, §132(j). This section provided that a person was prohibited from selling or purchasing any game bird or animal unless the person held a valid game breeder's license.  This section was recodified in the Natural Resources Article as §10-404 in 1973.  Chapter 4 of the Laws of Maryland 1973.  Until 1986, the only amendment was a provision added in 1975 to permit a person to sell pheasant, quail, and mallard ducks raised by a game breeder.[5]

Under the 1943 law, all venison or deer meat, either wild or farm-raised, was prohibited from being sold in Maryland.  *See*

---

[5] After the 1975 amendment former NR §10-404(c) provided as follows:

> (1) Except as provided in paragraph (2) or unless a person holds a game breeder's license, he may not sell, offer for sale, purchase, barter, or exchange, at any time within the State any game bird or mammal except the meat, pelt, or carcass of any muskrat, raccoon, mink, otter, nutria, or opossum, whether caught in this State or in another state, territory, or country.  However, a person may purchase and keep live game birds and mammals in captivity for propagation if he first obtains a permit from the Secretary and pays a $2 fee. This permit shall expire December 31 of the issuing year.

> (2) A person may purchase and sell pheasant, quail, and mallard ducks raised in or out of State by a game breeder.  The seller and purchaser shall maintain records indicating the origin of every bird purchased or sold including the name and address of the game breeder.  The records are subject to inspection by the Department at any reasonable time.

Memorandum of Advice from Assistant Attorney General Ben Bialek to Colonel Jack Taylor (July 6, 1979).

### B.    1986 Amendment

The crucial language was added by Chapter 805, Laws of Maryland 1986, as part of a comprehensive bill the short title of which was "Rabies Control and Captive Wildlife." Chapter 805 inserted the phrase "taken from the wild" following "game birds and mammals," inserted "game" in front of "mammals," removed the licensing provision and the provision that allowed a game breeder to sell game mammals, and repealed the 1975 amendment regarding certain waterfowl.

Chapter 805 originated as House Bill 1601, which was sponsored by the Chairman of the Environmental Matters Committee on behalf of the Department of Natural Resources. The intent of House Bill 1601 was to regulate the sale, distribution, and possession in captivity of wild animals in the state. Senate Bill Analysis of House Bill 1601. House Bill 1601 was the result of a two-year study by a joint federal-state committee that examined the problems attendant with the possession of live wildlife in captivity. Memorandum from Donald MacLauchlan, Director of Forest, Parks and Wildlife to Delegate Larry Young, Chairman, and Members of the Environmental Matters Committee (March 12, 1986). The bill repealed all existing statutes concerning captive wildlife in NR Subtitle 9 and re-enacted these provisions with additional regulation of captive wildlife.

The Department of Natural Resources has suggested that the intent behind the "taken from the wild" language was to clarify that the sale of captive game animals raised and bred by licensed breeders was to be governed by the new Subtitle 9 dealing specifically with captive wildlife, rather than NR §10-404(c). This interpretation is consistent with NR §10-905(d), also added by Chapter 805, authorizing the Secretary of Natural Resources to "prescribe, by rule or regulation, the conditions under which a person may possess and sell game birds and mammals intended for human consumption which have been purchased from a licensed game breeder." The sale of all other "game mammals," including

farm-raised venison not sold by a licensed breeder, would still be prohibited under NR §10-404(c).[6]

The bill's title does not describe the amendment to NR §10-404(c). Ordinarily, a significant change in the law, allowing the sale of a product that had previously been prohibited, would be reflected in the title. Indeed, had the General Assembly intended to effect such a change in the law, the omission of any reference to it in the title would at least have raised a question under Article III, §29 of the Constitution. But the Attorney General's bill review letter did not discuss the issue at all, lending greater weight to our assessment that the General Assembly did not intend to change the law prohibiting the sale of all venison. *See* Bill Review Letter from Attorney General Sachs to Governor Hughes (May 16, 1986).

Moreover, the March 1986 memorandum from Donald MacLauchlan described the amendment to NR §10-404(c) as "to further clarify that it is the policy of the State to prevent people from killing wild game birds or game mammals for sale of the meat with the specific exceptions." Memorandum at 2. This description indicates that the Department of Natural Resources sought only to clarify the section rather than to change the policy of prohibiting the sale of farm-raised venison. Furthermore, neither the Bill Analysis of the Senate Economic and Environmental Affairs Committee nor the Research Analysis of the House Environmental Matters Committee, both of which contain a lengthy description of the legislation, mention the amendment to NR §10-404(c). Rather, both analyses stress that the legislation would create more rather than less regulation over the sale of "game mammals."

Finally, if the "taken from the wild" language were construed to exclude farm-raised venison, no mechanism in the statute requires a person to document that the venison was farm-raised. Thus, investigators would have no way to distinguish between farm-raised venison, which would be legal, and wild venison, which would be prohibited, since it is impossible to tell the difference between the two types of meat. Sellers of "wild" venison could simply claim that

[6] Interestingly, the Department of Natural Resources never adopted regulations that would have permitted and described the conditions under which a person could sell captive game mammals for food. Consequently, captive game mammals cannot be sold for human consumption.

the meat was farm-raised.  Had the General Assembly intended to authorize trafficking in farm-raised venison as part of a comprehensive bill that regulated "game mammals," the General Assembly would likely have provided for some type of regulation over the vendors of the venison, so that the prohibition on the sale of "wild" venison could still be enforced.

## C.    *Administrative Construction*

The Department of Natural Resources, the agency charged with enforcing the statute, has consistently interpreted NR §10-404(c) to prohibit the sale of farm-raised deer.  Since the Department believes that the intent of the "taken from the wild" language was only to clarify that the sale of game mammals sold by licensed breeders was to be governed by NR §10-905, the Department's interpretation of NR §10-404(c) did not change after Chapter 805 went into effect.

In fact, the Department introduced legislation in 1991 to allow the sale of "game birds and game mammals" that have been legally manufactured into an article of commerce in this state or another country. House Bill 256.  The bill would have required the Department of Natural Resources to adopt regulations that established a record-keeping procedure for the documentation of the venison.  The bill, however, was reported unfavorably by the House Environmental Matters Committee.

Other bills introduced in the 1992 and 1993 legislative sessions would have permitted the sale of domestically raised venison.[7] Nevertheless, none of these bills was passed by the General Assembly.  The bill analyses for each of these bills, as well as statements from the Departments of Natural Resources and Agriculture, affirm that current law prohibits the sale of domestically raised venison.  *See* Bill Analysis for House Bill 1379 (1992) (under current law, deer farming is prohibited in Maryland); Department of Natural Resources Bill Report on HB 1379 (March 23, 1992) (present law prohibits deer farming); Department of Agriculture Bill

---

[7] House Bill 1379 in 1992 would have authorized deer farming in Maryland as well as exempted deer farming from the provision of NR §10-404(c).  Senate Bill 833 of 1993 would have authorized the importation of farm-raised and officially inspected deer meat. Senate Bill 146 of 1993 would have authorized fallow deer farming in Maryland.

Report on HB 1379 (March 27, 1992) (Maryland farmers are prohibited from raising game animals, and Maryland restaurants and retailers are prohibited from selling venison); Bill Analysis for Senate Bill 833 (1993) (Senate Bill 833 would authorize the commercial sale of venison); Department of Natural Resources Bill Report on SB 833 (February 19, 1993) (current law is interpreted to prohibit the sale of processed, packaged venison imported to Maryland).

Thus, both the context of the 1986 legislation as well as the current interpretation of the statute indicate that the General Assembly did not intend to allow the sale of farm-raised venison in Maryland.

### IV

### Conclusion

A half century ago, the General Assembly decided to bar the sale of venison, whatever its source. In our opinion, the General Assembly has not changed this policy decision, although language added to the statute in 1986 confuses the issue. Hence, we conclude that the sale of imported farm-raised venison is prohibited in Maryland. We do recommend that the General Assembly correct the statutory language so that it accurately reflects the legislative objective.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice**

*Amanda Stakem Conn, a volunteer intern with the Opinions and Advice Division, contributed substantially to the preparation of this opinion.